**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HOWARD T. BALDWIN, individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>          v.<br><br>STAR SCIENTIFIC INC., ROCK CREEK PHARMACEUTICALS, INC., and GNC HOLDINGS, INC.,<br><br>                      Defendants. | Case No. 14-cv-00588<br><br>Hon. Rebecca R. Pallmeyer<br><br>Magistrate Judge Daniel G. Martin |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................2

  A.   Star Scientific Launches the Worthless Anatabloc Through Its Wholly-Owned Subsidiary Rock Creek, GNC Joins In to Lend Credibility and Make Money ................................................................................................2

  B.   The FDA Warns Star Scientific That Anatabloc "Is Not Generally Recognized As Safe And Effective" For The Treatment Of Disease ....................4

  C.   Defendants Injured Plaintiff, Who Was Deceived By Defendants' Misrepresentations that Anatabloc Would Provide a Health Benefit ....................5

III.  ARGUMENT ................................................................................................6

  A.   Defendants Do No Dispute Plaintiff's Article III Standing to Assert Individual Claims, But Confuse Standing With Whether Plaintiff Can Meet Rule 23 ................................................................................................6

  B.   Plaintiff's Claim Under the Illinois Consumer Fraud and Deceptive Sales Practices Act Satisfies Fed. R. Civ. P. 9(b) and States A Plausible Claim for Relief ................................................................................................10

  C.   Plaintiff's Complaint States Plausible Claims for Breaches of Express Warranty and the Implied Warranty of Merchantability. ....................................16

    1.   Star Scientific controlled and directed Rock Creek, with which Plaintiff is in privity. ................................................................................16

    2.   The Complaint sufficiently identifies the express warranty that Anatabloc would treat or cure disease. ......................................................17

    3.   Plaintiff relied on Defendants' express warranty that Anatabloc could provide health benefits and/or treat or cure a variety of diseases. ................................................................................................19

    4.   Plaintiff also pleads a plausible breach of implied warranty of merchantability. ................................................................................20

  D.   Plaintiff's Complaint States a Valid Claim for Unjust Enrichment ......................22

IV.   CONCLUSION ................................................................................................24

010423-11  680373 V1

# TABLE OF AUTHORITIES

<u>**Page(s)**</u>

## Cases

*In re Aftermarket Filters Antitrust Litig.*,
2009 U.S. Dist. LEXIS 104114 (N.D. Ill. Nov. 5, 2009) .................................................... 9, 10

*Alexander v. United States*,
721 F.3d 418 (7th Cir. 2013) ............................................................................................... 6

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) ............................................................................................... 7

*In re Auto. Parts Antitrust Litig.*,
2013 U.S. Dist. LEXIS 80338 (E.D. Mich. June 6, 2013) .................................................. 9

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
701 F. Supp. 2d 356 (E.D.N.Y. 2010) ....................................................................... 7, 8, 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 6

*Boston Fish Mkt., Inc. v. EMS-USA Insulated Doors, Inc.*,
2013 U.S. Dist. LEXIS 77429 (N.D. Ill. June 3, 2013) ...................................................... 17

*Burrow v. Sybaris Clubs Int'l, Inc.*,
2013 U.S. Dist. LEXIS 159817 (N.D. Ill. Nov. 8, 2013) .................................................... 8, 9

*Citibank, N.A. v. Wilbern*,
2013 U.S. Dist. LEXIS 42177 (N.D. Ill. Mar. 26, 2013) .................................................... 76

*Esmark, Inc. v. NLRB*,
887 F.2d 739 (7th Cir. 1989) ............................................................................................. 16

*Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l. Title Ins. Co.*,
412 F.3d 745 (7th Cir. 2005) ............................................................................................. 11

*Forsythe v. Clark USA, Inc.*,
864 N.E.2d 227 (Ill. 2007) ................................................................................................. 17

*FTC v. AFD Advisors, LLC*,
2014 U.S. Dist. LEXIS 8870 (N.D. Ill. Jan. 24, 2014) ...................................................... 11

*FTC v. QT, Inc.*,
448 F. Supp. 2d 908 (N.D. Ill. 2006) ................................................................................. 15

*Goldberg v. Rush Univ. Med. Ctr.*,
  929 F. Supp. 2d 807 (N.D. Ill. 2013) ...................................................................11

*In re Grand Theft Auto Video Game Consumer Litig.*,
  2006 U.S. Dist. LEXIS 78064 (S.D.N.Y. 2006) ...................................................10

*Gredell v. Wyeth Labs., Inc.*,
  367 Ill. App. 3d 287 (Ill. App. Ct. 2006) .......................................................14, 15

*Guinn v. Hoskins Chevrolet*,
  836 N.E.2d 681 (Ill. App. Ct. 2005) ....................................................................23

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
  545 N.E.2d 672 (Ill. 1989) ...................................................................................23

*Karpowicz v. GMC*,
  1997 U.S. Dist. LEXIS 10604 (N.D. Ill. July 18, 1997) ................................19, 20

*Keller v. Flynn*,
  346 Ill. App. 499 (Ill. App. Ct. 1952) ..................................................................18

*Kuhl v. Guitar Ctr. Stores, Inc.*,
  2008 U.S. Dist. LEXIS 17222 (N.D. Ill. Feb. 28, 2008) ........................................9

*Mason v. Medline Indus.*,
  731 F. Supp. 2d 730 (N.D. Ill. 2010) ...................................................................11

*Metz v. Joe Rizza Imps., Inc.*,
  700 F. Supp. 2d 983 (N.D. Ill. 2010) .....................................................................6

*Miller v. Showcase Homes, Inc.*,
  1999 U.S. Dist. LEXIS 4748 (N.D. Ill. Mar. 31, 1999) ........................................19

*Muir v. Playtex Prods., LLC*,
  2013 U.S. Dist. LEXIS 158797 (N.D. Ill. Nov. 6, 2013) .......................................15

*Payton v. County of Kane*,
  308 F.3d 673 (7th Cir. 2002) ...........................................................................7, 10

*Pearson v. Target Corp.*,
  2012 U.S. Dist. LEXIS 187208 (N.D. Ill. Nov. 9, 2012) ................................14, 15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ...............................................................................11

*Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*,
  548 F. Supp. 2d 619 (N.D. Ill. 2008) ...................................................................23

- iii -

*Purizer Corp. v. Battelle Mem'l Inst.*,
    2002 U.S. Dist. LEXIS 138 (N.D. Ill. Jan. 4, 2002) ........................................................23

*Ramirez v. STi Prepaid LLC*,
    644 F. Supp. 2d 497 (D.N.J. 2009) ........................................................................10

*Roberson v. Novartis Pharms. Corp.*,
    2011 U.S. Dist. LEXIS 48352 (N.D. Ill. May 5, 2011) ........................................18

*Rosenstern v. Allergan, Inc.*,
    2013 U.S. Dist. LEXIS 153225 (N.D. Ill. Oct. 25, 2013) ....................................17

*Sellers v. Boehringer Ingelheim Pharms., Inc.*,
    881 F. Supp. 2d 992 (S.D. Ill. 2012) ........................................................................18

*Shinmax v. Colovos*,
    2014 U.S. Dist. LEXIS 20268 (N.D. Ill. Feb. 19, 2014) ....................................24

*Sirazi v. General Mediterranean Holding, SA*,
    2013 U.S. Dist. LEXIS 29636 (N.D. Ill. Mar. 5, 2013) ......................................24

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ......................................................................................6

*Thorogood v. Sears, Roebuck & Co.*,
    2006 U.S. Dist. LEXIS 82975 (N.D. Ill. Nov. 9, 2006) ......................................23

*United States ex rel. Geschrey v. Generations Healthcare, LLC*,
    922 F. Supp. 2d 695 (N.D. Ill. 2012) ......................................................................11

*Vosberg v. Smith & Nephew, Inc.*,
    2013 U.S. Dist. LEXIS 84915 (N.D. Ill. June 18, 2013) ....................................22

### Statutes

810 Ill. Comp. Stat. 5/2-313(a) ........................................................................................18

## I.       INTRODUCTION

Anatabloc does not work as represented.  Yet, this fact did not stop Defendants Star Scientific Inc. ("Star Scientific"), Rock Creek Pharmaceuticals, Inc. ("Rock Creek"), and GNC Holdings, Inc. ("GNC") from promoting Anatabloc as a "wonder drug" with numerous health benefits and uses, from treating excessive inflammation associated with arthritis, to Alzheimer's disease, traumatic brain injury (concussions), diabetes and multiple sclerosis.  Defendants wish to distance themselves from their actions by claiming – with myopic focus – that Plaintiff lacks standing and his Class Action Complaint ("Complaint") is deficient.

However, the Court should deny Defendants' motion to dismiss in its entirety.  First, Plaintiff has standing to assert claims on his own behalf under Article III of the Constitution. Whether he meets the requirements of typicality and adequacy under Rule 23 such that he will be appointed the class representative to represent the thousands of other Anatabloc purchasers is a question to be considered at class certification.  Second, Plaintiff's Complaint states multiple claims and alleges facts demonstrating a plausible right to relief for each of the claims asserted. Indeed, as to the claim under the Illinois Consumer Fraud and Deceptive Practices Act, the Complaint satisfies Rule 9(b), because Plaintiff alleges the "who, what, when, where and how" of Defendant's fraud.  Third, the Complaint alleges plausible express and implied warranty claims.  The law does not require that a written warranty be a separate paper with the title "EXPRESS WARRANTY" and the allegation that Anatabloc did not work and could not provide a benefit confirms that the product was not merchantable.  Lastly, Plaintiff also states a claim for unjust enrichment, which is an independent claim under Illinois law.

Accordingly, Defendants' motion should be denied.  In the alternative, Plaintiff respectfully requests leave to amend.

## II.     BACKGROUND

**A.     Star Scientific Launches the Worthless Anatabloc Through Its Wholly-Owned Subsidiary Rock Creek, GNC Joins In to Lend Credibility and Make Money**

After a series of failed business ventures in the cigarette and smokeless tobacco market, Star Scientific reinvented itself as a company producing nutritional supplements, establishing Defendant Rock Creek as a wholly-owned subsidiary in 1997 to focus on the development, manufacture, sale, and marketing of "nutraceuticals," *i.e.*, foods or food-derived products meant to provide health benefits.[1]  Because Star Scientific's first venture into the nutraceutical field was a failure, recording marginal sales with another product, Star Scientific and Rock Creek urgently needed a successful product offering to stay afloat.[2]

As a result, Star Scientific and Rock Creek focused their hope on Anatabloc, ultimately promoting it as a "wonder drug" with a number of medical benefits and uses, from treating excessive inflammation (associated with arthritis) to Alzheimer's disease, traumatic brain injuries (or concussions), diabetes and multiple sclerosis.[3]  By August 2011, Star Scientific and Rock Creek began offering Anatabloc to the public, labeling the product as an "Anti-Inflammatory Support Dietary Supplement."[4]  Star Scientific and Rock Creek were so desperate for success that it released false results for Anatabloc product testing (cobbled together not by an impartial research organization but by the Roskamp Institute, an investor with a vested interest in Anatabloc's success),[5] bribed the former Virginia Governor and his wife to promote Anatabloc

---

[1] Compl., ¶ 13.

[2] Compl., ¶¶ 14-15.

[3] Compl., ¶ 1.

[4] Compl., ¶¶ 16, 18.

[5] Compl., ¶¶ 28-29.

from the Governor's Mansion (leading to their now-pending indictment),[6] and falsely promoted that an elite academic institution gave scientific credibility to the company's false claims.[7]

GNC decided to participate in the deceptive marketing scheme by early-2012, with GNC first offering Anatabloc to consumers in February 2012.[8] Just as they needed the credibility from the scientific community based on scientific testing, Star Scientific and Rock Creek needed GNC's nationwide reach to get the products to GNC's paying customers.[9] These customers relied on GNC's superior knowledge in dietary supplements through GNC's facade of commitment to truth in marketing.[10] Indeed, GNC touted itself as having "set the standard in the health and nutrition industry by demanding truth in labeling and ingredient safety and potency…."[11] As Star Scientific publicly described GNC's value: "GNC continues to be a valuable partner for Anatabloc® because of its reputation in the area of nutritional supplementation and its loyal customer base."[12]

Instead of passively participating in the sale of Anatabloc by simply making the product available to consumers, GNC "partnered" with Star Scientific and Rock Creek to actively promote Anatabloc, utilizing advertisements of professional golfer and Anatabloc Brand Ambassador, Fred Couples (a well-known arthritis sufferer) and building Anatabloc sales.[13] As a Star Scientific employee noted: "We could not ask for a better partner than GNC. The growth

---

[6] Compl., ¶¶ 30-33.

[7] Compl., ¶¶ 34-48.

[8] Compl., ¶ 20.

[9] Compl., ¶¶ 20, 26.

[10] Compl., ¶ 20, 26.

[11] Compl., ¶¶ 26.

[12] Compl., ¶ 22.

[13] Compl., ¶¶ 22, 25.

of Anatabloc® and increase in the awareness of the product over the past year could not have happened without the support of GNC."[14]

Yet, at all times relevant, Anatabloc could not and did not work as represented and was worthless to consumers.[15] The Federal Trade Commission publicly recognizes that the same conditions for which Defendants marketed Anatabloc are "conditions without a cure," including: multiple sclerosis, diabetes, Alzheimer's disease, and arthritis.[16] Moreover, with respect to concussions, the FDA's National Health Fraud Coordinator has warned: "[W]e can promise you this: There is no dietary supplement that has been shown to prevent or treat [concussions]."[17] Nonetheless, Defendants charged class members approximately $99 per bottle of Anatabloc, despite knowing that Anatabloc could not treat or cure arthritis, Alzheimer's disease, traumatic brain injuries (or concussions), diabetes and/or multiple sclerosis.[18] Like other health fraudsters, Defendants' marketing claims for Anatabloc targeted conditions without a cure.[19]

**B.    The FDA Warns Star Scientific That Anatabloc "Is Not Generally Recognized As Safe And Effective" For The Treatment Of Disease**

Because nutraceuticals (like Anatabloc) can be brought to the market quickly and easily,[20] they can be abused by unscrupulous entities. However, if a product like Anatabloc is promoted "for use in the cure, mitigation, treatment, or prevention of disease," it is considered a

---

[14] Compl., ¶ 25.

[15] Compl., ¶¶ 27, 62, 95, 99, 106.

[16] Compl., ¶ 3 (citation omitted).

[17] Compl., ¶ 4 (citation omitted). *See also* Compl., ¶ 4 ("[T]he director of the FDA's Division of Dietary Supplement Programs has stated: 'As amazing as the marketing claims here are, the science doesn't support the use of any dietary supplements for the prevention of concussions or the reduction of post-concussion symptoms that would enable one to return to playing a sport faster.'") (citation omitted).

[18] Compl., ¶¶ 6, 27, 55, 56.

[19] Compl., ¶¶ 2-4.

[20] Compl., ¶ 13.

- 4 -

new drug under the Federal Food, Drug and Cosmetic Act, and the FDA must be convinced of the safety and efficacy of the products before they can be marketed to humans.[21]  Despite this requirement, Defendants promoted, advertised and marketed Anatabloc without seeking or receiving FDA approval, which they could not have obtained because the so-called "scientific" studies would not have cleared the protective hurdles of reliability.[22]

On December 20, 2013, the FDA sent Star Scientific a Warning Letter, which confirmed that Star Scientific "promotes the product Anatabloc for conditions that cause the product to be a drug," adding that "[t]he therapeutic claims … establish that this product is a drug because it is intended for use in the cure, mitigation, treatment, or prevention of disease."[23]  Yet, "Anatabloc is not generally recognized as safe and effective" for the advertised disease treatments.[24]

## C. Defendants Injured Plaintiff, Who Was Deceived By Defendants' Misrepresentations that Anatabloc Would Provide a Health Benefit

Plaintiff Howard Baldwin was a repeat purchaser of Anatabloc, purchasing the "wonder drug" from a GNC store near his home in Illinois as well as on-line on a subscription basis directly from Star Scientific's subsidiary Rock Creek.[25]  He purchased Anatabloc because he saw and was deceived by Defendants' advertisements and their misrepresentations that Anatabloc would provide a benefit.[26]  Indeed, like the other members of the class he seeks to represent, Plaintiff paid for and ingested Anatabloc based on the false promise that Anatabloc could and

---

[21] Compl., ¶ 49-50.

[22] Compl., ¶ 51.

[23] Compl., ¶ 53.

[24] Compl., ¶ 54.

[25] Compl., ¶ 9.

[26] Compl., ¶ 9.

- 5 -

would provide a benefit.[27]  Plaintiff cancelled his subscription because Anatabloc did not work

and he would not have purchased Anatabloc absent Defendants' conduct.[28]  He was damaged as

a result of Defendants' wrongdoing and seeks to remedy that wrongdoing with this lawsuit.[29]

## III.  ARGUMENT

In ruling on a Rule 12(b)(6) motion, "the court assumes all well-pleaded allegations … to

be true and draws all inferences in the light most favorable to the plaintiff."[30]  The Complaint

must contain enough facts to state a claim "plausible on its face,"[31] but "plausibility" does not

mean "probability" as Defendants would have this Court rule.[32]  The Court does not decide

"whose version to believe, or which version is more likely than not."[33]  The plaintiff need only

"give enough details … to present a story that holds together."[34]  Here, the allegations provide

more than sufficient factual matter to state plausible claims for relief.

**A.  Defendants Do No Dispute Plaintiff's Article III Standing to Assert Individual Claims, But Confuse Standing With Whether Plaintiff Can Meet Rule 23**

Defendants move to dismiss the Complaint under Rule 12(b)(1), which implicates the

Court's subject-matter jurisdiction.[35]  "When ruling on a Rule 12(b)(1) motion to dismiss for

---

[27] Compl., ¶ 63.

[28] Compl., ¶ 9, 77.

[29] Compl., ¶¶ 9, 56.

[30] *Metz v. Joe Rizza Imps., Inc.*, 700 F. Supp. 2d 983, 987 (N.D. Ill. 2010).

[31] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[32] *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013).

[33] *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

[34] *Id.*

[35] *See generally* Fed. R. Civ. P. 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:  (1) lack of subject-matter jurisdiction....").

- 6 -

lack of standing, this court is required to 'accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor.'"[36]

Defendants concede Plaintiff has Article III standing to assert individual claims under Illinois law. For that reason alone, Defendants' motion should be denied. Instead, through Rule 12(b)(1), they argue that Plaintiff lacks standing to assert state law claims on behalf of putative class members residing in other states.[37] Defendants confuse Article III standing requirements with the ability to represent a class of similarly situated persons under Fed. R. Civ. P. 23. Article III individual standing to sue under a state law and the ability to obtain relief under Rule 23 for unnamed residents of other states are separate inquiries. The Seventh Circuit has explained:

> Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing. Standing is a prerequisite to *filing suit*, while the underlying merits of a claim (and the laws governing its resolution) determine whether a plaintiff is *entitled to relief*…In our view, it is best to confine the term "standing" to the Article III inquiry and thus keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria.[38]

Defendants' argument here parallels that offered by the defendant (and rejected by the court) in *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*[39] The plaintiffs in *Bayer* filed a class action on behalf of purchasers of two over-the-counter supplements, which

---

[36] *Citibank, N.A. v. Wilbern*, 2013 U.S. Dist. LEXIS 42177, at *4-5 (N.D. Ill. Mar. 26, 2013) (Pallmeyer, J.) (quoting *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003)).

[37] Defs.' Mem. at 2-3 (citing Compl., ¶ 9).

[38] *Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008) (emphases in original). *Cf. Payton v. County of Kane*, 308 F.3d 673, 681 (7th Cir. 2002) ("We understand *Ortiz* [*v. Fibreboard Corp.*, 527 U.S. 815 (1999)] to rest on the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs. The certification of a class changes the standing aspects of a suit, because [a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff.") (quotation and citation omitted, second alteration in original).

[39] 701 F. Supp. 2d 356 (E.D.N.Y. 2010).

- 7 -

were not FDA-approved and were alleged to be "incapable of delivering the health benefits touted on their packaging."[40] In denying a motion to dismiss, the *Bayer* court correctly recognized that "[w]hether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."[41] Thus, "'[t]he relevant question … is not whether the Named Plaintiffs have standing to sue Defendants-they most certainly do-but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action. This question is … appropriately answered through the class certification process.'"[42] As a result, the court concluded that:

> It follows that the sundry state law claims cannot be dismissed for lack of standing when there is no requirement that the named plaintiffs have standing to bring them. Under the guise of standing, defendant has raised the issues of adequacy of the representatives and whether there are common questions of law or fact that predominate over any questions affecting only individual members. These are issues to be addressed at the class certification stage.[43]

Persuasive authority is also found in cases from this district. Denying a motion to dismiss, Judge Leinenweber noted recently in *Burrow v. Sybaris Clubs Int'l, Inc.*: "[I]t is routine for Courts in this District to determine 'the name plaintiff['s] capacity to represent individuals

---

[40] *Id.* at 362. *Cf. id.* with Compl., ¶ 2 ("Defendants have never proven any of these substantial claims in clinical trials or received [FDA] approval for its products. Moreover, Anatabloc is not the 'wonder drug' it claims to be.").

[41] *Id.* at 377.

[42] *Id.* 377 (quoting *In re Grand Theft Auto Video Game Consumer Litig.*, 2006 U.S. Dist. LEXIS 78064, at *3 (S.D.N.Y. 2006)).

[43] *Id.* at 377 (internal citations omitted).

- 8 -

from other states' before resolving standing concerns.'"[44]  Similarly, in *Kuhl v. Guitar Ctr.*

*Stores, Inc*., Judge Gottschall explained:

> [T]he defendant is challenging standing only for those state law
> claims brought on behalf of an as-yet uncertified class.  Before any
> class is certified, the class claims are conjectural.  It is only
> through a determination of typicality of claims across the various
> state statutes that the court will know whether standing is
> appropriate for all the claims asserted.  Therefore, the issue of class
> certification is "logically antecedent" to the issue of class standing
> in this case.  *See Payne*, 308 F.3d at 678 (finding class certification
> issues to be "logically antecedent" to issues of standing where
> plaintiffs had standing to bring individual claims against certain
> county defendants, but not to assert the class claims that arose
> under the same statute against different county defendants) (citing
> *Ortiz*, 527 U.S. at 831)).  Therefore, Guitar Center's challenge to
> class standing is premature.[45/46]

---

[44] 2013 U.S. Dist. LEXIS 159817, at *8-9 (N.D. Ill. Nov. 8, 2013) (quoting *In re Aftermarket Filters Antitrust Litig.*, 2009 U.S. Dist. LEXIS 104114, at *1 (N.D. Ill. Nov. 5, 2009)).

[45] 2008 U.S. Dist. LEXIS 17222, at *7-8 (N.D. Ill. Feb. 28, 2008).

[46] Thus, the cases from this district cited by Defendants stand in contrast to abundant authority from in and out of this District.  *Compare* Mem. at 2-3 (citing *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 U.S. Dist. LEXIS 119962, at *1 (N.D. Ill. Aug. 23, 2013); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2012 U.S. Dist. LEXIS 2501, at *1 (N.D. Ill. Jan. 9, 2012); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 920-23 (N.D. Ill. 2009)) *with Burrow v. Sybaris Clubs Int'l, Inc*., 2013 U.S. Dist. LEXIS 159817, at *8-9 (N.D. Ill. Nov. 8, 2013) ("But the Supreme Court has instructed that class certification issues are 'logically antecedent' to Article III concerns, and thus may be resolved first."); *In re Aftermarket Filters Antitrust Litig*., 2009 U.S. Dist. LEXIS 104114, at *1 (N.D. Ill. Nov. 5, 2009) ("[A]ll of the plaintiffs, named and unnamed, have Article III standing to sue defendants. All plaintiffs have allegedly suffered identical injuries caused by several parties related by a conspiracy to fix prices.  Therefore, the name plaintiffs' capacity to represent individuals from other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law claims on behalf of class members in those states.") (internal citations omitted); *Kuhl v. Guitar Ctr. Stores, Inc*., 2008 U.S. Dist. LEXIS 17222, at *7-8 ("the defendant is challenging standing only for those state law claims brought on behalf of an as-yet uncertified class. Before any class is certified, the class claims are conjectural. It is only through a determination of typicality of claims across the various state statutes that the court will know whether standing is appropriate for all the claims asserted."); *In re Auto. Parts Antitrust Litig.*, 2013 U.S. Dist. LEXIS 80338 (E.D. Mich. June 6, 2013) ("[Plaintiffs] advance claims for relief under the statutes of the jurisdictions in which they reside but seek similar relief for absent class members under the antitrust and consumer protection statutes of other states. The plaintiffs do not seek relief for themselves under the laws of the states where no plaintiff resides."); *In re Bayer Corp.*

- 9 -

Expanding on this concept, Judge Gettleman added in *In re Aftermarket Filters Antitrust Litig.*, that since "[a]ll plaintiffs have allegedly suffered identical injuries caused by several parties related by a conspiracy to fix prices … the name plaintiffs' capacity to represent individuals from other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law claims on behalf of class members in those states."[47]

"This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members," rather, Plaintiff was individually injured by operation of the same deceptive actions and practices that injured purchasers residing in other states.[48] This Court will consider whether Plaintiff satisfies Rule 23 at class certification. At this stage, the fact that Defendant concedes that Plaintiff has standing pursuant to Article III should result in a denial of Defendant's motion to dismiss under Rule 12(b)(1).

**B.** **Plaintiff's Claim Under the Illinois Consumer Fraud and Deceptive Sales Practices Act Satisfies Fed. R. Civ. P. 9(b) and States A Plausible Claim for Relief**

Defendant also asserts that the Complaint does not satisfy Rule 9(b). "Rule 9(b) requires that a party pleading fraud or mistake must state a claim with particularity, generally recognized

---

*Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356 (E.D.N.Y. 2010) ("Whether the named plaintiffs have standing to bring suit under each of the state laws alleged is 'immaterial' because they are not bringing those claims on their own behalf, but are only seeking to represent other, similarly situated consumers in those states."); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 497 (D.N.J. 2009) (rejecting the defendants' argument that the plaintiffs could not bring claims based on the violation of consumer protection laws in states where the named plaintiffs did not suffer injury); *In re Grand Theft Auto Video Game Consumer Litig.*, 2006 U.S. Dist. LEXIS 78064, at *1 (S.D.N.Y. Oct. 25, 2006) ("[C]lass certification is logically antecedent to standing and the Court will defer consideration of standing until after the class certification issue has been resolved.").

[47] 2009 U.S. Dist. LEXIS 104114, at *24-25 (citing *Payton*, 308 F.3d at 679).

[48] *Payton*, 308 F.3d at 682.

- 10 -

as the who, what, when, where, and how of the claim."[49]  While Defendants' arguments suggest

that this Court lacks flexibility in addressing Rule 9(b) arguments, the opposite is true.  In fact,

"[t]he Seventh Circuit has shied away from a rigid, formulaic approach to Rule 9(b) and noted

that '[t]he twin demands of detail and flexibility, though in tension with one another, make sense

in light of the competing purposes of the federal rules.'"[50]  Thus, "because courts and litigants

often erroneously take an overly rigid view of the formulation, [the Seventh Circuit has]

observed that the requisite information … may vary on the facts of a given case."[51]

The Complaint as a whole establishes that Rule 9 is met.  While "[t]he particulars of the

charge of fraud would be easier to grasp if the acts, the times, the concealment, and a single

defendant were placed in a single paragraph … as long as those data are somewhere in the

complaint – and they are – Rule 9(b) is satisfied."[52]  Additionally, a plaintiff pleading a

fraudulent scheme "involving numerous transactions over a period of years need not plead

specifics with respect to every instance of fraud," as examples can satisfy the rule.[53]

Defendants' motion to dismiss should be denied because Plaintiff has pled the specifics

of Defendants' deceptive marketing scheme with the details required by Rule 9(b), including:

---

[49] *FTC v. AFD Advisors, LLC*, 2014 U.S. Dist. LEXIS 8870, at *5 (N.D. Ill. Jan. 24, 2014)
(citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436,
446 (7th Cir. 2011)).

[50] *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (quoting
*Pirelli*, 631 F.3d at 442) (second alteration in original).

[51] *Pirelli*, 631 F.3d at 442.  *Cf. United States ex rel. Geschrey v. Generations Healthcare,
LLC*, 922 F. Supp. 2d 695, 705 (N.D. Ill. 2012) ("The Seventh Circuit has recently noted the
importance of balancing detail with flexibility in applying the Rule 9(b) standard, criticizing
courts and litigants that cling too tightly to the incantation of 'who, what, when, where, and
how,' rather than understanding that the information required of a plaintiff will differ in each
case.") (quoting *Pirelli*, 631 F.3d 441-42).

[52] *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l. Title Ins. Co.*, 412 F.3d 745,
749 (7th Cir. 2005).

[53] *Mason v. Medline Indus.*, 731 F. Supp. 2d 730, 735 (N.D. Ill. 2010).

**WHO**: Defendants Star Scientific, Rock Creek, and GNC.

**WHAT**: Without FDA approval or proof any of their claims in clinical testing, Defendants promote Anatabloc as a "wonder drug" with a number of medical benefits and uses, from treating excessive inflammation (associated with arthritis) to Alzheimer's disease, traumatic brain injury (or concussions), diabetes and multiple sclerosis. (Compl., ¶¶ 1-2.) In fact, Anatabloc does not and cannot treat or cure the diseases represented by Defendants. (Compl., ¶¶ 3-4.) However, Defendants charged Plaintiff and the class approximately $99 per bottle of Anatabloc despite the fact that the "wonder drug" cannot treat or cure these injuries and diseases. (*Id.* ¶ 6.)

**WHERE/WHEN**: Star Scientific launched Anatabloc in August 2011 – even though it had yet to achieve any clinical results showing Anatabloc was effective (*Id.* ¶ 16) and Anatabloc's product packaging promised that the product was an "Anti-Inflammatory Support Dietary Supplement." (*Id.* ¶ 18.). Defendants Star Scientific sold Anatabloc on-line directly to Plaintiff and the Class. (*Id.* ¶ 9). Moreover, GNC sold Anatabloc to GNC customers beginning on February 1, 2012, though GNC.com and in select stores. (*Id.* ¶ 20.) No later than June 1, 2012, GNC utilized an advertisement featuring arthritis-sufferer Fred Couples (professional golfer and "Anatabloc Brand Ambassador") in the front window of its stores. (*Id.* ¶ 21.)

**WHY**: Plaintiff alleges that Star Scientific and Rock Creek needed Anatabloc to be a "home run" in order to keep the company afloat after prior products were poorly received. (*Id.* ¶¶ 13-15.) Defendants sold Anatabloc despite knowing "the wonder drug was too good to be true." (*Id.* ¶ 5.) Defendants saw extensive money to be made, with Defendants charging the exorbitant price of approximately $99 per bottle of Anatabloc to Plaintiff and the Class. (*Id.* ¶ 6.)

**HOW**: Defendants Star Scientific and Rock Creek launched a marketing ploy in which they conveyed the false and misleading impression that Johns Hopkins University School of Medicine was officially and independently sponsoring and carrying out studies of Anatabloc in order to give scientific credibility to the claims about the products' miraculous medical benefits and uses. (*Id.* ¶ 5.) Defendant GNC provided credibility to the fraudulent scheme as a self-described specialty retailer of health and wellness products, with customers shopping "at GNC rely[ing] on GNC's superior knowledge in dietary supplements, as well as its commitment to truth in marketing." (*Id.* ¶ 26.) Star Scientific and Rock Creek

- 12 -

> recognized the importance of GNC to the scheme stating publicly that "GNC continues to be a valuable partner for Anatabloc® because of its reputation in the area of supplementation" and also that "[t]he growth of Anatabloc® and increase in awareness of the product over the past year could not have happened without the support of GNC." (*Id.* ¶ 25.)

Moreover, Plaintiff has pled that he was actually deceived by Defendants' actions, and where, when and how he purchased Anatabloc.[54] As Plaintiff has sufficiently "place[d] the defendants on notice of the precise misconduct with which they are charged,"[55] Rule 9(b) is satisfied.

Nevertheless, Defendants argue that Plaintiff has not alleged with particularity a deceptive act by an individual defendant. However, as described above, Rule 9(b) has been satisfied here, with Plaintiff identifying specific representations in the fraudulent marketing scheme.[56] And, Defendants' arguments are undercut by the overriding deceptive act that permeates throughout the Complaint: Defendants' promotion of Anatabloc as providing benefits, which are illusory.

Next, Defendants assert that the Complaint is deficient because it fails to allege with particularity when or where Plaintiff saw the alleged misrepresentations.[57] Defendant ignores Plaintiff's allegations that Plaintiff purchased Anatabloc because he "saw and was deceived by Defendants' advertisements," having purchased Anatabloc, including in person at GNC.[58] Moreover, as a purchaser of Anatabloc, Plaintiff received the product packaging and purchased

---

[54] Compl., ¶ 9 ("He purchased Anatabloc because he saw and was deceived by Defendants' advertisements."). *See also id.* ¶ 56 (noting Plaintiff "purchased Anatabloc based on Defendant's misrepresentations that Anatabloc would provide a benefit"); *id.* ¶ 77 ("Plaintiff…would not have paid for Anatabloc, absent Defendants' conduct.").

[55] FED. R. CIV. P. 9(b).

[56] *See supra* at Section III.B.

[57] Defs.' Mem. 7.

[58] Compl., ¶ 9.

the product in person at a GNC store.[59]  It also ignores Plaintiff's allegation that he purchased

Anatabloc during the Class Period, which is alleged to be August 1, 2011 to the

present.[60]

       Further, Defendants also challenge the "how" of Plaintiff's Complaint, declaring that he

has not alleged "how" the representations are false.  Again, that the representations are false is

clear cut and adequately pled:  Defendants' representations about Anatabloc are not true and

Anatabloc did not work.[61]  In fact, Plaintiffs expressly quote the FTC and FDA which

unequivocally stated that there are *no* products which can cure the diseases claimed by

Defendants, and that any company that claims otherwise is a "health fraudster."[62]  In mounting

this challenge, Defendants cling to the case of *Gredell v. Wyeth Labs., Inc.*,[63] but neglect to

provide the Court with relevant context distinguishing this case from *Gredell*.  In *Gredell*:

> *Plaintiff did not claim that the drugs [at issue] were ineffective*.
> Indeed, he admits he did not and could not prove they were
> ineffective. Rather, his claim was that defendants violated the Act
> because they could not support their claim of the drugs'
> effectiveness with "scientific" tests proving that effectiveness.
> Lack of substantiation is deceptive only when the claim at issue
> implies there is substantiation for that claim, i.e., if defendants had
> claimed something along the lines of "tests show that Phenergan
> Expectorant Plain is effective for cough suppression" or

---

[59] Compl., ¶ 21.

[60] Compl., ¶¶ 9, 57.

[61] *See Pearson v. Target Corp.*, 2012 U.S. Dist. LEXIS 187208, at *5 (N.D. Ill. Nov. 9, 2012) ("First, Plaintiff is not claiming that Defendant wrongfully represented that its product had been clinically tested.  He is simply arguing that Defendant made representations about the effect of its product that it knew to be false.  Under Defendant's interpretation of the law, it would be free to go out and make knowingly false representations about its products so long as it never falsely claimed that these representations were backed up by clinical testing.  That is an absurd result that the Illinois legislature did not intend.").

[62] Compl., ¶¶ 3-4.

[63] 367 Ill. App. 3d 287 (Ill. App. Ct. 2006).

- 14 -

> "Phenergan Expectorant Plain is more effective for cough
> suppression than XYZ Expectorant."[64]

Thus, *Gredell* stands in stark contrast with the facts of this case as Plaintiff specifically alleges

that he "cancelled his subscription because Anatabloc *did not work*."[65]

Citing a single out-of-state case, Defendants also attempt to invoke a so called "express

disclaimer" to argue that there can be no consumer fraud where "the back panel of the Anatabloc

package" stated "[t]his product is not intended to diagnose, treat, cure or prevent any disease."[66]

However, courts in this district reject Defendants' notion that such attempted disclaimers call for

dismissal, particularly where, like here, that "disclaimer" is buried in small print.[67]

---

[64] *Id.* at 291 (emphasis added).

[65] Compl., ¶ 9 (emphasis added). *Cf.* Compl., ¶ 6 (alleging Anatabloc "cannot treat or cure arthritis, Alzheimer's disease, traumatic brain injury (or concussions), diabetes or multiple sclerosis"); Compl., ¶ 27 ("GNC touted Anatabloc without any evidence that Anatabloc could in fact provide a benefit to consumers.  In fact, Anatabloc could not provide the benefits touted by GNC or Star Scientific.").

[66] Defs.' Mem. at 9-10 (citing *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *6-7 (S.D. Cal. Nov. 1, 2012)).

[67] *See, e.g.*, *Pearson*, 2012 U.S. Dist. LEXIS 187208, at *5 ("[T]he disclaimer is ineffective here.  If all of the aches, pains and other conditions that Up & Up Triple Strength claims to ameliorate are necessarily associated with osteoarthritis – which is effectively what Defendant argues – then the disclaimer is contradicted by the product's representations, which reflect that it can in fact be used to treat symptoms of the disease.  If these conditions are not necessarily associated with osteoarthritis (or any other disease), the disclaimer is inapplicable."); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 924 n.15 (N.D. Ill. 2006) (discussing deceptive advertising and noting "Defendants' inconspicuous small-font statement appearing just six times during the 30-minute infomercial that 'this product is not intended to diagnose, treat, cure or prevent disease' is wholly inadequate to change the net impression of the pain relief claims made in the infomercial.").  *See also Muir v. Playtex Prods., LLC*, 2013 U.S. Dist. LEXIS 158797, at *15 (N.D. Ill. Nov. 6, 2013) (denying motion to dismiss where defendant argued no deception because the product's package contained an attempted disclaimer:  "Playtex's (alleged) placement of the disclaimer on the back of the package in 'much smaller, barely legible type,' Doc. 26 at 10, could have had the capacity to deceive consumers, who – drawing a reasonable inference in Muir's favor – were likely to focus their attention on the front of the package and its prominently featured 'Proven #1' claim, and because Playtex made no other efforts to inform consumers that the Diaper Genie II Elite had not been proven superior to diaper disposal products with proprietary film linings.").

Accordingly, because Plaintiff's Complaint places Defendants on notice of the claims on which they must defend, Defendants' motion should be denied.

**C.      Plaintiff's Complaint States Plausible Claims for Breaches of Express Warranty and the Implied Warranty of Merchantability.**

> **1.      Star Scientific controlled and directed Rock Creek, with which Plaintiff is in privity.**

Star Scientific first argues that the breach of warranty claims against it should be dismissed on privity grounds because "Plaintiff does not allege he purchased Anatabloc from Star Scientific."[68] Star Scientific controlled Rock Creek, with which Plaintiff is in privity.

To start, the Complaint asserts numerous facts confirming Star Scientific's control of Rock Creek. Rock Creek "is a wholly-owned subsidiary of Star Scientific" that "currently manufactures and sells two nutraceutical dietary supplements."[69] Indeed, after striking out in previous business ventures, Star Scientific "reinvented itself," a critical part of which involved Star Scientific establishing Rock Creek.[70] And, the Complaint alleges that Star Scientific's "revenues were based 'almost exclusively' on the sale of Anatabloc," further confirming the interrelationship between Rock Creek and Star Scientific.[71] Moreover, Anatabloc's product packaging includes references to both Rock Creek and Star Scientific.[72] Thus, given their close relationship, the Court should not preclude Star Scientific's liability here.[73]

---

[68] Defs.' Mem. at 11-12. Rock Creek and GNC do not contest that Plaintiff is in privity with them, as Plaintiff both purchased Anatabloc at GNC and on-line directly from Rock Creek. *See* Compl., ¶ 9.

[69] Compl., ¶ 11.

[70] Compl., ¶ 13.

[71] Compl., ¶ 55.

[72] Compl., ¶ 18 (inserting copy of Anatabloc product packaging, which notes that Anatabloc is "Manufactured for Rock Creek Pharmaceuticals" and "© 2012 Star Scientific, Inc.").

[73] *See, e.g.*, *Esmark, Inc. v. NLRB*, 887 F.2d 739, 756 (7th Cir. 1989) (holding that "a parent corporation may be held liable for the wrongdoing of a subsidiary where the parent directly

- 16 -

Furthermore, Plaintiff is exempt from the privity requirement because Star Scientific "expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiff[].["[74] Here, the Complaint alleges that Star Scientific "expressly warranted that Anatabloc could treat or cure a variety of ailments and diseases," "[that] the product could not deliver on the advertised claims and was not approved by the FDA."[75] And it further alleges that Plaintiff and the class relied on these warranties.[76] Indeed, Star Scientific marketed Anatabloc for the treatment of a whole host of diseases, including inflammation such as that associated with arthritis, even though Anatabloc cannot, in fact, treat those diseases."[77] It also billed "Anatabloc as a miracle supplement, with a variety of medical benefits and uses…."[78] Given these allegations, the warranty claims against Star Scientific should stand.[79]

### 2. The Complaint sufficiently identifies the express warranty that Anatabloc would treat or cure disease.

For their next attack on the warranty claims, Defendants argue that "Plaintiff has failed to adequately allege the terms of the purported express warranty," arguing as if an express warranty

---

participated in the subsidiary's unlawful actions"); *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 237 (Ill. 2007) ("Where there is evidence sufficient to prove that a parent company mandated an overall business and budgetary strategy and carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary, that parent company could face liability."). While *Boston Fish Mkt., Inc. v. EMS-USA Insulated Doors, Inc.*, 2013 U.S. Dist. LEXIS 77429 (N.D. Ill. June 3, 2013), declined to apply this concept to warranty claims, that court noted that the complaint there made no allegations regarding the corporate relationship, unlike the Complaint here.

[74] *Rosenstern v. Allergan, Inc.*, 2013 U.S. Dist. LEXIS 153225, at *19 (N.D. Ill. Oct. 25, 2013) (quoting *In re McDonalds French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007)).

[75] Compl., ¶¶ 82, 95.

[76] Compl., ¶¶ 85, 96.

[77] Compl., ¶ 19.

[78] Compl., ¶ 15.

[79] *See Rosenstern*, 2013 U.S. Dist. LEXIS 153225, at *20 (denying motion to dismiss warranty claim where plaintiff alleged warranties made to the public through advertising and that plaintiff relied on this information, such allegations made defendant's liability plausible).

can only exist if Plaintiff received a paper headed with bold words "EXPRESS WARRANTY."[80]

However, Plaintiff's allegations are sufficient to identify an express warranty and Defendant's

attempt to incorporate Rule 9(b) pleading requirements into warranty law must be rejected.

Under Section 2-313 of the Illinois (Uniform) Commercial Code, sellers may create an

express warranty thorough "[a]ny affirmation of fact or promise … which relates to the goods

and becomes part of the basis of the bargain."[81]  In addition, Illinois "law is well established that

no particular words or forms of expression are necessary to create an express warranty."[82]  Here,

Plaintiff alleges that "Defendants expressly warranted that Anatabloc could treat or cure a variety

of ailments and diseases."[83]  And, "Anatabloc does not conform to these express representations

because it cannot treat or cure the variety of ailments or diseases touted by Defendants."[84]  Thus,

Plaintiff's allegations put this case in line with others denying Defendants' motions to dismiss

where the opposite of what a defendant said was the truth.[85]

---

[80] Defs.' Mem. at 12.

[81] 810 ILL. COMP. STAT. 5/2-313(a).

[82] *Keller v. Flynn*, 346 Ill. App. 499, 508 (Ill. App. Ct. 1952).

[83] Compl., ¶ 82.  *See also* Compl., ¶ 1 (Anatabloc was promoted with a number of medical benefits and uses); *id.* ¶ 6 (alleging Anatabloc cannot treat or cure arthritis); *id.* ¶¶ 13-16 (describing how Star Scientific launched Anatabloc to treat diseases without any clinical evidence supporting its claims); *id.* ¶ 19 ("Defendants marketed Anatabloc for the treatment of a whole host of diseases … even though Anatabloc cannot, in fact, treat those diseases.").

[84] Compl., ¶ 83.  *See also* Compl., ¶ 6 (alleging Anatabloc cannot treat or cure arthritis); *id.* ¶ 19 (alleging "Defendants marketed Anatabloc for the treatment of a whole host of diseases … even though Anatabloc cannot, in fact, treat those diseases"); *id.* ¶ 56 ("Anatabloc cannot provide a benefit").

[85] *See, e.g.*, *Sellers v. Boehringer Ingelheim Pharms., Inc*., 881 F. Supp. 2d 992, 1010-11 (S.D. Ill. 2012) (denying attempt to dismiss warranty claims where "Defendant[] expressly warranted that Pradaxa was a safe and effective prescription blood thinner," "Defendant overstated the efficacy of Pradaxa," "Defendant disseminated to the plaintiff and her physicians inaccurate, misleading, and false information" and "Pradaxa was as safe or safer, and as effective or more effective, than other anticoagulation alternatives.") (internal citations omitted); *Roberson v. Novartis Pharms. Corp*., 2011 U.S. Dist. LEXIS 48352, at *4-5 (N.D. Ill. May 5, 2011)

### 3. Plaintiff relied on Defendants' express warranty that Anatabloc could provide health benefits and/or treat or cure a variety of diseases.

Defendants also argue that "Plaintiff has failed to sufficiently allege that any such affirmation or promise ever became part of the basis of the bargain."[86] This argument too fails. Plaintiff alleges that "[h]e purchased Anatabloc because he saw and was deceived by Defendants' advertisements," "Defendants expressly warranted that Anatabloc could treat or cure a variety of ailments and diseases," and Plaintiff and the class members relied on such express warranties.[87] These allegations satisfy Plaintiff's pleading burden under Rule 8.

Defendants try to downplay the significance of Plaintiff's allegations by grasping to two factually distinguishable cases. Unlike the plaintiffs in either case cited by Defendants, Plaintiff has not pled himself out of court. First, Defendants cite to *Miller v. Showcase Homes, Inc.*, an action involving whether a warranty existed with the sale of a modular home.[88] Importantly, *Miller* involved a complaint with specific allegations from the plaintiffs that precluded any finding that an express warranty came into existence prior to the sale and the only basis for the "warranty" was a letter referencing the terms of a purported warranty which was provided only after the sale occurred.[89] Similarly, Defendants cite to *Karpowicz v. GMC*,[90] where the plaintiffs

---

(denying motion to dismiss warranty claims: "Roberson's statement that Novartis warranted that Trileptal was safe and effective is sufficient to put Novartis on notice of his express warranty claim and raises his right to relief above the speculative level. Novartis' argument that there was in fact no express warranty between it and Roberson goes to the merits of the breach of express warranty claim and is not appropriate at this stage of the case.").

[86] Defs.' Mem. at 13.

[87] Compl., ¶¶ 9, 82, 85.

[88] Defs.' Mem. at 13 (citing *Miller v. Showcase Homes, Inc.*, 1999 U.S. Dist. LEXIS 4748, at *1 (N.D. Ill. Mar. 31, 1999)).

[89] *Miller*, 1999 U.S. Dist. LEXIS 4748, at *25.

[90] Defs.' Mem. at 14 (citing *Karpowicz v. GMC*, 1997 U.S. Dist. LEXIS 10604, at *19, 20 (N.D. Ill. July 18, 1997)).

used post-sale press releases, service bulletins, and other materials in asserting warranty claims in their complaint, though the plaintiffs did "not claim to have ever been aware of or relied on GM's purported statements."[91]  The case before this Court is distinct, because Plaintiff alleges here "he saw and was deceived by Defendants' advertisements."[92]

### 4. Plaintiff also pleads a plausible breach of implied warranty of merchantability.

Defendants further assert that Plaintiff has not stated a claim for breach of the implied warranty of merchantability[93] as "Plaintiff has failed to allege the ordinary purpose of Anatabloc, for what purpose he purchased Anatabloc, or how Anatabloc was unfit for its ordinary purpose."[94]  Yet again, Defendants' glossing over the Complaint fails.

Here, the Complaint alleges that the ordinary purpose of Anatabloc was to provide health benefits to Plaintiff and the members of the class.  "Defendants manufacture, market and/or sell Anatabloc [and] promote Anatabloc as a 'wonder drug' with a number of medical benefits and uses…."[95]  Indeed, Star Scientific and Rock Creek produced "so-called 'nutraceutical' dietary supplements,"[96]  with the Complaint explaining that "[n]eutraceuticals are foods or food-derived

---

[91] *Karpowicz*, 1997 U.S. Dist. LEXIS 10604, at *20.

[92] Compl., ¶ 9.  *See also id.* ¶ 56 (noting Plaintiff "purchased Anatabloc based on Defendant's misrepresentations that Anatabloc would provide a benefit"); *id.* ¶ 77 ("Plaintiff … would not have paid for Anatabloc, absent Defendants' conduct.").

[93] Defendants also move to dismiss Plaintiff's allegations of breach of implied warranty of fitness for a particular purpose. Defs.' Mem. at 16-17.  Plaintiff states that he did not intend to bring a claim for breach of implied warranty of fitness for a particular purpose, but inadvertently included references to state adoptions of Section 2-315 of the Uniform Commercial Code.  Thus, Plaintiff withdraws such references.

[94] Defs.' Mem. 15.  Defendants concede for purposes of the motion to dismiss that Plaintiff has pled that the sale of Anatabloc involves the sale of a good and that they are merchants.

[95] Compl., ¶ 1.

[96] Compl., ¶ 13.  Likewise, Defendant GNC is a company in the business of selling such products, describing "itself as a leading global specialty retailer of health and wellness products,"

- 20 -

products meant to provide health benefits."[97]  Plaintiff, like every other purchaser of Anatabloc,

purchased Anatabloc because he thought it would work and "[h]e cancelled his subscription

because Anatabloc did not work."[98]  Despite Defendants' assertion that the Complaint doesn't

allege that "Anatabloc was unfit for its ordinary purpose," *i.e.*, providing health benefits, the

Complaint repeatedly alleges that Anatabloc was completely unfit for that purpose, including:

- "Defendants charged the exorbitant price of approximately $99 per bottle of Anatabloc – despite the fact that the 'wonder drug' cannot treat or cure arthritis, Alzheimer's disease, traumatic brain injury (or concussions), diabetes or multiple sclerosis."  Compl., ¶ 6.

- "In fact, as reflected below, Defendants marketed Anatabloc for the treatment of a whole host of diseases, including inflammation such as that associated with arthritis, even though Anatabloc cannot, in fact, treat those diseases."  Compl., ¶ 19.

- "Yet, GNC touted Anatabloc without any evidence that Anatabloc could in fact provide a benefit to consumers.  In fact, Anatabloc could not provide the benefits touted by GNC or Star Scientific."  Compl., ¶ 27.

---

that sets "the standard in the health and nutrition industry by demanding truth in labeling and ingredient safety and potency, while remaining on the cutting edge of nutritional science." Compl., ¶¶ 12, 26.

[97] Compl., ¶ 13 (emphasis added).  *See also* Compl., ¶ 30 ("Ahead of its launch of the product, Star Scientific embarked on a national promotional tour, in which Star Scientific bribed its CEO's political friends to promote the unproven Anatabloc.  The first stop was a June 1, 2011, conference at Roskamp, which was attended by scientists and institutional investors alike. At the conference, Star Scientific's CEO introduced the First Lady of Virginia, Virginia Governor Robert McDonnell's wife, Maureen.  In her speech, Mrs. McDonnell expressed her full support for Anatabloc, stating that the product could be used to lower health care costs in Virginia and around the country…."); *id.* ¶ 32 ("Star Scientific's CEO met with the Virginia Health Secretary and a top official from Virginia Department of Health and Human Resources where they discussed how Anatabloc could be used to lower health costs….").

[98] Compl., ¶ 11.  *See also* Compl., ¶ 56 (noting Plaintiff "and the Class purchased Anatabloc based on Defendants' misrepresentations that Anatabloc would provide a benefit"); Compl., ¶ 63 ("Plaintiff paid for and ingested Anatabloc, which Defendants manufactured, marketed, and sold based on the promise that Anatabloc could and would provide a benefit.").

- "Because Anatabloc cannot provide a benefit, Plaintiffs and the Class were injured, suffering economic injuries, and are entitled to a full refund for their purchases." Compl., ¶ 56.

- "Anatabloc does not conform to these express representations because it cannot treat or cure the variety of ailments or diseases touted by Defendants." Compl., ¶ 83.

- "Defendants' representations and warranties were false, misleading, and inaccurate, in that Anatabloc was not of merchantable quality because the product could not deliver on the advertised claims and the product was not approved by the FDA." Compl., ¶ 95.

- "Defendants breached the implied warranties, as Anatabloc was not fit for its intended purposes and uses as it could not deliver on the intended purposes and was not approved for such uses by the FDA." Compl., ¶ 99.

- "Defendants knew that Anatabloc could not treat or cure diseases – but advertised that it did." Compl., ¶ 106.

Indeed, the FTC and the FDA have cautioned against dietary supplements for the very conditions without a cure that Defendants advertise.[99] These allegations carry Plaintiff's burden.[100]

### D. Plaintiff's Complaint States a Valid Claim for Unjust Enrichment

Under Illinois law, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity,

---

[99] Compl., ¶ 3 (reflecting FTC recognition that "[h]ealth fraudsters often target people who … have … conditions without a cure, like" multiple sclerosis, diabetes, Alzheimer's disease, HIV/AIDS, arthritis); Compl., ¶ 4 (reflecting warning from the FDA's National Health Fraud Coordinator: "[W]e can promise you this: There is no dietary supplement that has been shown to prevent or treat [concussions].").

[100] *See, e.g.*, *Vosberg v. Smith & Nephew, Inc.*, 2013 U.S. Dist. LEXIS 84915, at *9 (N.D. Ill. June 18, 2013) (denying dismissal of implied warranty claim for a hip replacement where plaintiff "alleges that the hip was not fit for its ordinary purpose and was not of merchantable quality because it was subject to breakage, and specifically, because it 'sheared in two pieces.'").

and good conscience."[101]  The Complaint states a plausible claim by alleging Plaintiff and the

class conferred benefits on Defendants by paying for Anatabloc and Defendants have retained

such benefits under unjust circumstances where they "knew that Anatabloc could not treat or

cure diseases – but advertised that it did."[102]

  Even though the law requires the Complaint to be construed in Plaintiff's favor,

Defendants ask the Court to do the opposite.  Defendants ask the Court to summon into existence

an express contract between Plaintiff and Defendants, based simply that on the allegations (1)

that Plaintiff "purchased Anatabloc" and (2) that Defendants breached express and implied

warranties.[103]  However, Plaintiff's unjust enrichment claim should not be dismissed where

Plaintiff has not pled the existence of a written contract.  Not surprisingly, all of Defendants'

cases identified the existence of *written* contracts.[104]

---

[101] *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

[102] Compl., ¶ 106.

[103] Defs.' Mem. at 18.

[104] *See, e.g.*, *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 621 (N.D. Ill. 2008) (action including breach of contract allegation where the parties entered into a written "Prepaid Marketing Meeting Expense Agreement"); *Thorogood v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 82975, at *13-14 (N.D. Ill. Nov. 9, 2006) (dismissing unjust enrichment claim where plaintiff "incorporated by reference the allegations of a contractual express warranty between himself and Sears and [defendant] attached [plaintiff's] Better Business Bureau complaint report which also specifically mentions that the dryer was subject to a one year contractual warranty"); *Purizer Corp. v. Battelle Mem'l Inst.*, 2002 U.S. Dist. LEXIS 138, at *2 (N.D. Ill. Jan. 4, 2002) (action involving breach of contract allegation where "[p]laintiff and defendant entered into a written agreement"); *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 685 (Ill. App. Ct. 2005) (action including breach of contract allegation where the plaintiffs entered into a "retail installment contract" with defendant).  Even if a written contract existed, alternative pleading is permissible.

- 23 -

Next, Defendants claim that the unjust enrichment claim must be dismissed, rehashing their arguments that Plaintiff fails to plead with particularity.[105]  However, as described above, the strictures of Rule 9(b) are met here.  Thus, this argument fails.

Finally, Defendants proclaim that since the ICFA claim should be dismissed, the unjust enrichment count must also be dismissed.  However, Defendants' argument ignores that "[t]he Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action."[106]  Additionally, because Defendants' ICFA claim survives, there can be no basis to dismiss the unjust enrichment claim on this ground.[107]

## IV.    CONCLUSION

Accordingly, for the reasons provided above, Defendants' motion to dismiss the Complaint with prejudice should be denied.  In the alternative, Plaintiff requests leave to replead.  Plaintiff further requests the Court grant him all such other relief as the Court deems necessary and appropriate.

---

[105] Defs.' Mem. at 18-19.

[106] *Shinmax v. Colovos*, 2014 U.S. Dist. LEXIS 20268, at *5-6 (N.D. Ill. Feb. 19, 2014) (quoting *Cleary v. Philip Morris Inc*., 656 F.3d 511, 516 (7th Cir. 2011)) (denying motion to dismiss unjust enrichment claim where defendant was alleged to have unjustly profited).

[107] *Sirazi v. General Mediterranean Holding, SA*, 2013 U.S. Dist. LEXIS 29636, at *26 (N.D. Ill. Mar. 5, 2013) ("Here, as Plaintiffs have pleaded a fraud claim that has survived Defendants' motion to dismiss, the court finds no basis to dismiss the unjust enrichment claim.").

Dated: April 21, 2014                    Respectfully Submitted,


By**:**   */s/ Daniel J. Kurowski*
Elizabeth A. Fegan
Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 W. Lake Street, Suite 400
Oak Park, IL  60301
Telephone:  (708) 628-4960
Facsimile:  (708) 628-4950
Email: beth@hbsslaw.com
      dank@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Ave., Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on April 21, 2014, a true and correct copy of the foregoing was electronically filed by CM/ECF, which caused notice to be sent to all counsel of record.

By**:**  */s/ Daniel J. Kurowski*